IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
ENTERED
JUL 3 0 2002
Michael N. Milby, Clerk

| | |
|---|---|
| GEORGE BEASELY, on behalf of himself and others similarly situated, Plaintiff, | § § § § |
| v. | §   CIVIL ACTION NO. G-01-318 |
| HORIZON OFFSHORE CONTRACTORS, INC. Defendant. | § § § § § |

### ORDER DENYING PLAINTIFF'S MOTION TO CERTIFY A COLLECTIVE ACTION AND TO ALLOW REPRESENTATIVE TESTIMONY

This is an action to recover unpaid wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, brought by Plaintiff George Beasely ("Beasely"), on behalf of himself and others similarly situated, against his employer, Defendant Horizon Offshore Contractors, Inc. ("Horizon"). Now before the Court is Beasely's Motion to Certify a Collective Action and to Allow Representative Testimony, filed July 2, 2002. For the reasons articulated below, Beasely's Motion is hereby **DENIED**.

**I.**

Horizon is a marine construction services company that operates a fleet of twelve operational derrick, pipeline and combination barges worlwide. The hourly employees aboard Horizon's barges ("Hourly Employees") are riggers, mechanics, welders, electricians, operators, clerks and other skilled and unskilled workers. They work twelve hour shifts that generally begin around 11:00 am and end at approximately 11:00 pm, at which time they are relieved by their counterparts. The Hourly Employees eat a pre-shift meal approximately one hour prior to the time at which their shifts begin. During this meal period, Horizon's foremen conduct a ten to fifteen minute safety meeting wherein

they discuss the work that is to be performed on the upcoming shift, as well as safety concerns and other pressing problems. After the safety meeting, the Hourly Employees finish eating and then head out to work. In addition to these daily safety meetings, the Hourly Employees are also required to attend monthly fire and man overboard drills, lasting from thirty to forty-five minutes on average.

Last year, Beasely filed this lawsuit against Horizon, on behalf of himself and the other hourly Employees, seeking to recover wages for time spent attending the aforementioned safety meetings and emergency drills. The Court subsequently ordered Horizon to provide Beasely with the names and addresses of its present and former employees so that Beasely could contact them about potentially opting-in to this suit. Counsel for both Parties agreed on a notice to be sent to such individuals which, after approval by the Court, was mailed to all potential members of the purported class. Eighty-three Hourly Employees filed opt-in notices within the time frame set by the Court. To date, the opt-in Hourly Employees have enjoyed the collective benefits of consolidated discovery, case management and trial preparation.

Now Beasely seeks to officially designate this matter as an opt-in collective action pursuant to 29 U.S.C. § 216(b).[1] In response, Horizon argues that this suit cannot be maintained as a collective action because the Hourly Employees are not "similarly situated." Thus, the Court must turn to this issue of whether collective action treatment is warranted here.

## II.

Section § 216(b) provides, in pertinent part:

> Any employer who violates [the minimum wage or maximum hours provision of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. An action to recover such

---

[1] The Court emphasizes that Beasely is still the sole Plaintiff in the case, as the status of the opt-in class members has not yet been determined by the Court.

> liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Beasely bears the burden of proving that he is similarly situated to the opt-in Hourly Employees he seeks to represent. See Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001); White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1312 (M.D. Ala. 2002); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 362 (M.D. Ala. 1999); Bayles v. American Med. Response of Colo., Inc., 950 F. Supp. 1053, 1067 (D. Colo. 1996). Significantly, the ultimate determination of whether to create a representative class under § 216(b) is a decision squarely within the Court's discretion. See Hipp, 252 F.3d at 1219.

### III.

Courts have not yet articulated a precise definition for "similarly situated" within the context of § 216(b). However, it is clear that "similarly situated" does not necessarily mean "identically situated." See Riojas v. Seal Produce, Inc., 82 F.R.D. 613, 616 (S.D. Tex. 1979); see also Hipp, 252 F.3d at 1219 (explaining that collective action plaintiffs must "allege similar, though not identical" violations); Grayson v. K Mart Corp., 79 F.3d 1086, 1095 (11th Cir. 1996) ("[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)"). As a general rule, a FLSA collective action is appropriate where the plaintiff demonstrates "similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." Crain v. Helmrich & Payne Int'l Drilling Co., 1992 WL 91946, at *2 (E.D. La. April16, 1992) (citing Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)). Section § 216(b) collective actions are primarily meant for situations where a consolidated proceeding

will lower costs for the plaintiffs via the pooling of resources; and limit the controversy to one proceeding that efficiently resolves common issues of law and fact arising from the same alleged activity. See Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L.Ed.2d 480 (1989).

Factors relevant to the "similarly situated" inquiry include: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102-1105 (10th Cir. 2001); Moss v. Crawford Co., 201 F.R.D. 398, 410 (W.D. Pa. 2000); Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 677-679 (D. Colo. 1997); Bayles, 950 F. Supp. at 1066; Brooks v. BellSouth Telecomm., Inc., 164 F.R.D. 561, 568 (N.D. Ala. 1995). The first factor queries whether the opt-in class members have similar job duties, geographic locations, supervision and salaries. See Moss, 201 F.R.D. at 409 (citing Thiessen, 996 F. Supp. at 1081); Lusardi v. Xerox Corp., 118 F.R.D. 351, 358-59 (D.N.J. 1987); Brooks, 164 F.R.D. at 569. Allegations of an overarching practice or policy do not always favor certification, but evidence of a "single decision, policy or plan" may suggest that collective action treatment is proper. Moss, 201 F.R.D. at 410; Thiessen, 996 F. Supp. at 1081; Brooks, 164 F.R.D. at 566. The second factor relates to whether the defendant will raise the same defense with respect to each opt-in plaintiff. Because individualized defenses inevitably complicate representative actions, the presence of varied defense strategies disfavors collective action certification. See Moss, 201 F.R.D. at 410. Finally, the third factor pertains to whether a court can take a broad brush approach to the claims of the opt-in class members without sacrificing procedural fairness or unduly prejudicing any party. See generally id.

## IV.

Applying the relevant factors to the facts of this case, the Court concludes that collective action treatment is inappropriate here for several reasons. First, the compensation practices that Horizon claims to have utilized in order to compensate the Hourly Employees for time spent in safety training vary from barge to barge. For instance, Horizon maintains that (1) Hourly Employees aboard six of its barges (the AMERICAN HORIZON, CANYON HORIZON, CAJUN HORIZON, BRAZOS HORIZON, PACIFIC HORIZON, and PECOS HORIZON) received no extra pay for safety meetings or emergency drills; (2) Hourly Employees aboard the ATLANTIC HORIZON received time and a half pay for hours spent in safety meetings, but no extra pay for time spent conducting emergency drills; (3) the Hourly Employees aboard the GULF HORIZON received two hours overtime for time spent in safety meetings, but no extra pay for time spent conducting emergency drills; and (4) the Hourly Employees aboard the LONESTAR HORIZON were occasionally paid overtime for time spent attending safety meetings and time spent conducting emergency drills.

Horizon's defenses are also somewhat individualized with respect to each potential class member . The various defenses that may (or may not) apply to each opt-in Hourly Employee include" (1) the "seaman defense"–the FLSA does not apply to the employee because the employee was a seaman; (2) the "foreign waters defense"–the employee is exempt from the FLSA because the employee worked in foreign waters; (3) the "already paid defense"–the employee was otherwise compensated for attendance at safety training; and (4) the "lunch break defense"–the employee was provided with a paid thirty minute lunch break and/or two daily fifteen minute breaks that compensated them for time spent in safety training. Moreover, Beasely disputes the validity of each defense for reasons that may vary according to each potential class member. For example, Beasely claims that the "lunch break" defense doesn't apply to him because he always took less than thirty

minutes for lunch. But the fact that Beasely ate lunch quickly doesn't necessarily indicate that all of the Hourly Employees did so. Thus, the Court will have to undertake, to some extent, an individualized inquiry with respect to Horizon's various defenses and their applicability (or inapplicability) to each potential class member.

Clearly, trying this case as a collective action will militate against procedural efficiency and fairness. Although there are some common facts that are relevant to all of the Hourly Employees who have filed opt-in notices, the disparate pay practices utilized aboard Horizon's barges and the differences in the defenses that Horizon intends to assert against each potential class member indicate that an opt-in class would ultimately prove to be unmanageable and ineffective. Thus, this lawsuit is not a proper candidate for collective action treatment. The Court simply cannot ensure that the claims at issue will be resolved fairly and efficiently unless each Hourly Employee receives an individual trial. Accordingly, Beasely's Motion to Certify a Collective Action and to Allow Representative Testimony is hereby **DENIED** and the claims of the opt-in Plaintiffs are hereby **DISMISSED WITHOUT PREJUDICE**. See Mooney v. Aramco Servs., 54 F.3d 1207, 1212-1214 (5th Cir. 1995). Beasely's individual claims remain pending and set for trial.

**IT IS SO ORDERED.**

DONE this 30 day of July, 2002, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE